## Ezekiel E. Bonham et al.

### *v.*

## Ann Bonham et al.

A testator gave to his wife the use and income of his house and lands, for her life, and directed his executors to supply her out of his estate with everything that she might need or desire for her comfort, sustenance and happiness. He then gave a specific legacy to S.; several pecuniary legacies to others, and a devise of his house and lands, after his widow's death, to the trustees of a church, as a parsonage, on certain conditions.—*Held,*

(1) That the executors must resort to the principal of the personalty, for the widow's support, if the income thereof be insufficient.

(2) That the payment of the general legacies must be postponed until after the widow's death, and would be subject to ratable abatement if there should be a deficiency.

(3) That the specific legacy must be paid now and without abatement.

---

Bill for construction of will and directions to executors.

*Messrs. Voorhees & Large,* for complainants.

THE CHANCELLOR.

William Bonham, deceased, late of Hunterdon county, died in March, 1872, leaving a last will and testament, which has been

Bonham v. Bonham.

proved by the complainants, the executors thereof appointed. They bring this suit for construction of the will, and for directions in the discharge of their duty as executors in that connection. By the will, the testator first directed that all his just debts and funeral expenses should be promptly paid by his executors, and that the legacies should be discharged as soon as circumstances would permit, and in the manner directed by the will. He then gave to his wife all his household furniture which she might need or choose to select, for her use, and he also gave her the use of one cow. Also the occupancy, use, improvement and income of his dwelling-house and the land and its appurtenances, to have and to hold the same to her for and during the term of her natural life; and he thereby authorized and directed his executors to provide for and supply her out, of his estate, with everything that she might need or desire for her comfort, sustenance and happiness. He then gave to Rebecca C. Warford $1,200 and his gold watch, and a bed and bedding, and requested that she would continue to live with his wife during her lifetime, if her health and circumstances would permit. He then gave to John Sutton (his nephew) a bond and mortgage of $530; to his three nieces, Dentilia Sutton, Mary Sutton and Sarah Hunt, and his nephew, William B. Sutton, $200 each; to six persons, children of his deceased nephew, John Bonham, $200 each, as they should become of age, and in case of the death of either of them before arriving at lawful age, the legacy given to the decedent was to go to the survivors of them; to two persons, children of Uriah Bonham, deceased, he gave $200; to another one, a daughter of Uriah Bonham, and to another, a son of Uriah, he gave $100; to two persons, daughters of Isaac M. Keyser, deceased, he gave $200 each, on their arriving at lawful age, and provided that in case of the death of either before that time, the survivor should take both legacies; and he gave to a son of Joel W. Salter ,$100, on his attaining to his majority. The testator then made the following devise:

" After the decease of my wife, I give, devise and bequeath my dwelling-house and lot, containing one acre of land, as originally purchased by me of

Bonham v. Bonham.

Joel W. Salter, and all its appurtenances, to the trustees of the Rosemont Pres-
byterian Church, with this object in view: to assist in building up the cause,
and to help in advancing the Redeemer's kingdom on earth; the same to be
used as a parsonage or a home for the minister of the aforesaid church, to
have, and to be held by the said trustees, or their successors in office, so long
as there shall be sufficient interest manifested on the part of the congregation
and friends of the aforesaid church to warrant the assurance that the gift is
appreciated in the proper spirit; but, should they from any cause neglect to
have a minister for the space of one year, then the whole claim to be forfeited.
And furthermore, if, at the expiration of ten years of faithfulness on the part
of the minister and people, as above directed, there should not be a strong
evidence of spiritual prosperity and an encouraging increase in church mem-
bership, and a fair prospect of benefiting the community in general, then, in
such case, this bequest shall be withdrawn by my executors, who shall proceed
to advertise and sell the same according to law, the proceeds to be equally
divided between Ezekiel E. Bonham and Rebecca C. Warford."

He then directed that the rest of the land be sold after the
death of his wife, and gave all the residue of his estate to
Ezekiel E. Bonham and Rebecca C. Warford.

The personal estate amounts to $5,735.58, and the interest of
it has, in some years since the testator's death, proved insufficient
to properly support his widow, even in the most prudent and
economical manner, and her increasing infirmities (she is about
ninety-one years old, and very lame and nearly blind) will require
that all the interest and income of the estate, if not part of the
principal, be expended for her comfortable maintenance. Some
of the legatees have demanded payment of their legacies and
threaten suit. The bond and mortgage bequeathed to John
Sutton remain in the hands of the executors. The bill states
that the Rosemont Presbyterian Church has had no pastor for
the last ten years, nor have any services been held in their meet-
ing-house, under the organization known as the Rosemont Pres-
byterian Church, for at least ten years past, and that during all
that time, with perhaps a single exception, the meeting-house
has remained closed, and the congregation virtually disbanded,
although there "remain" (presumably, from a former full board)
two gentlemen, who act as trustees thereof. The corporation is
not made a party to this suit, though two persons are, as trustees
of the church. There is no answer, and there is no proof in the

cause, but the questions are submitted on the part of the executors alone ; there being no appearance on the part of any one else ; and on the allegations of the bill, merely.

The questions submitted are, Whether the general legacies are payable before the death of the testator's widow ; whether the gift of the bond and mortgage to John Sutton takes effect immediately (the debts have been paid), or is to be postponed until after the death of the widow, and the interest thereof, in the meantime, applied to her support, if necessary ; whether the executors, if the general legacies are not to be paid until after the widow's death, are at liberty to expend the principal, or any part of it, if necessary for the widow's support ; whether the general legacies will, if there be not enough to pay them in full, abate ratably ; and whether the devise to the church is valid.

The testator authorizes and directs his executors to "provide for and supply his wife out of his estate, with everything that she may need or desire for her support, sustenance and happiness." This provision is in the form of a direction to his executors, whom it charges with a duty which is to be discharged notwithstanding it will be necessary to expend more than the annual income of the personal estate to do it. If, therefore, the annual income is insufficient for the proper performance of the duty the executors should apply so much of the principal as may be necessary for the purpose. It follows that the payment of the general legacies is to be postponed, under the circumstances of the case, until the death of the widow, and if the personal estate shall then prove insufficient to pay them in full, they will abate ratably. *Titus* v. *Titus, 11 C. E. Gr. 111.* The gift of the bond and mortgage to John Sutton is a specific legacy, and is not subject to abatement. Nor is there any ground for holding that the enjoyment of it is to be postponed until the death of the widow. The devise to the trustees of the church does not take effect until the death of the widow. There is not only no necessity for passing upon it at this time, but it would not be proper to do so.